Nicholas Fabio, Appellant *v.* Civil Service Commission of the City of Philadelphia.

Argued April 7, 1977, before Judges CRUMLISH, JR., MENCER and ROGERS, sitting as a panel of three.

*Ronald L. Wolf,* with him *Stanley Bashman,* and *Bashman, Bernstein & Wolf,* for appellant.

*Howland W. Abramson,* Assistant City Solicitor, with him *James M. Penny, Jr.,* Assistant City Solicitor, and *Sheldon L. Albert,* City Solicitor, for appellee.

OPINION BY JUDGE MENCER, May 16, 1977:

In *Faust v. Police Civil Service Commission of Borough of State College,* 22 Pa. Commonwealth Ct. 123, 347 A.2d 765 (1975), we held that adultery by a police officer committed while not in uniform and off duty is conduct unbecoming a police officer, under

Section 1190(4) of The Borough Code,[1] 53 P.S. §46190 (4).

We are now confronted with a similar case, but here the police officer was charged, found guilty, and dismissed relative to conduct held to be in contravention of Article I, Section 1.75 of the Philadelphia Police Department Duty Manual (Police Manual), which states:

Conduct Unbecoming an Officer—

Repeated violations of departmental rules and regulations, or any other course of conduct indicating that a member has little or no regard for his responsibility as a member of the Police Department.

Nicholas Fabio (appellant) was appointed to the Philadelphia Police Department on November 2, 1969 and was assigned to the 14th District during the month of February 1970. On July 1, 1973, he was rated overall ''superior'' on his last performance report.

On October 1, 1973, the Commanding Officer of the 14th District of the Philadelphia Police Department received a phone call from a man who identified himself as Joseph Gleason. The caller stated that he was the father-in-law of the appellant and that he wished to register a complaint against Police Officer Stephen Richman because the latter had ''stolen'' his daughter (Joan Fabio) away from the appellant. Appellant's father-in-law also stated that Officer Richman was further responsible for having other police

---

[1] Act of February 1, 1966, P.L. (1965) 1656, *as amended*, 53 P.S. §46190(4), which states in pertinent part:

No person employed in any police or fire force of any borough shall be suspended, removed or reduced in rank except for the following reasons:

. . . .

(4) Inefficiency, neglect, intemperance, immorality, disobedience of orders, or conduct unbecoming an officer.

officers consummate sexual relations with his other daughter, Helen Gleason.

As a result of the above phone conversation, an investigation was commenced by the Commanding Officer of the 14th District. Interviews were conducted of the appellant, Officer Richman, Joan Fabio, and Helen Gleason, as well as several others. The interviews disclosed that the appellant and his wife had been having marital difficulties for approximately two years. The appellant became convinced that an extramarital sexual experience, involving both of them, might prove beneficial to their marriage. The appellant procured Officer Richman as a partner for his wife, and a girl friend of Officer Richman for himself. On one night in July 1973, they agreed to meet at Richman's apartment. On that night, the couples "switched" partners and appellant's wife and Officer Richman had sexual relations. However, the appellant did not have sexual relations with the girl Richman supplied. Following that night, appellant's wife and Officer Richman continued to have sexual relations. During the same period, following the initial encounter between appellant's wife and Officer Richman, the appellant admitted to having sexual relations with his wife's sister. On September 2, 1973, the appellant and his wife separated. The appellant immediately began divorce proceedings, and his wife stated in her interview that she had no interest in whether her husband continued his relationship with her sister since she intended to continue her relationship with Richman.

These unsavory disclosures led to appellant's being charged with violating Article I, Section 1.75 of the Police Manual, a finding of guilty as charged by the Police Board of Inquiry, and his dismissal from the Philadelphia Police Department on December 7, 1973. Appellant appealed his dismissal to the Civil

Service Commission of the City of Philadelphia, which denied his appeal.[2] Thereafter, appellant appealed to the Court of Common Pleas of the County of Philadelphia, which affirmed the decision of the Civil Service Commission. This appeal then followed and we affirm.

In exercising our scope of review here, we must affirm unless we find that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of the Local Agency Law[3] have been violated in the proceedings before the Commission, or that any necessary finding of fact is not supported by substantial evidence. Section 8, 53 P.S. §11308.

Appellant advances the contention that his conduct did not amount to conduct unbecoming an officer because it did not adversely affect the morale or efficiency of the bureau to which he was assigned and did not offend present-day publicly accepted standards of decency.

We again state what we said in *Cerceo v. Darby*, 3 Pa. Commonwealth Ct. 174, 183, 281 A.2d 251, 255 (1971):

---

[2] Officer Richman was also charged with "Conduct Unbecoming an Officer" and was also dismissed from the Philadelphia Police Department on December 7, 1973, following a hearing before a Police Board of Inquiry. However, Richman's dismissal was revoked by the Civil Service Commission of the City of Philadelphia and he was ordered restored to duty without emoluments or back pay. The Commission based its decision on the fact that it was the appellant who instigated the events leading up to Richman's dismissal. This appeal does not involve Officer Richman, but our disposition in this case and the disposition of the Civil Service Commission in Officer Richman's case seem to be unreconcilable. We are unaware of any principle of jurisprudence that completely excuses one coparticipant in wrongdoing simply because his coparticipant initially suggested the wrongdoing.

[3] Act of December 2, 1968, P.L. 1133, 53 P.S. §§11301-11311.

Twentieth Century America has the right to demand for itself, and the obligation to secure for its citizens, law enforcement personnel whose conduct is above and beyond reproach. The police officer is expected to conduct himself lawfully and properly to bring honor and respect to the law which he is sworn and duty-bound to uphold. He who fails to so comport brings upon the law grave shadows of public distrust. We demand from our law enforcement officers, and properly so, adherence to demanding standards which are higher than those applied to many other professions. It is a standard which demands more than a forbearance from overt and indictable illegal conduct. It demands that in both an officer's *private* and official lives he do nothing to bring dishonor upon his noble calling and in no way contribute to a weakening of the public confidence and trust of which he is a repository. The record in this case indicates that the appellants acted in a questionable manner which could bring dishonor upon their profession, and which did indeed contribute to a weakening of the public confidence and trust. (Emphasis added.)

Although the General Assembly has removed adultery from the Crimes Code, we have no doubt that most of our citizenry still believes it to be morally offensive and an unaccepted practice. In domestic relations it is still a very serious matter and our divorce laws still permit an injured and innocent spouse to divorce his or her mate upon proof of adultery.[4]

In *Baker Case*, 409 Pa. 143, 185 A.2d 521 (1962), a police lieutenant was found in an illegal gambling

---

[4] See Section 10(1)(c) of the Act of May 2, 1929, P.L. 1237, *as amended*, 23 P.S. §10(1)(c).

establishment on three occasions and, athough the police officer's presence there was not a crime per se, the Court concluded that such conduct "adversely affects the morale of fellow police officers and also tends to destroy public confidence in the ability and willingness of police officers to uphold law and order." 409 Pa. at 146, 185 A.2d at 522.

Next, appellant asserts that Article I, Section 1.75 of the Police Manual is unconstitutional on its face because of vagueness. In *Zeber Appeal,* 398 Pa. 35, 43, 156 A.2d 821, 825 (1959), our Supreme Court stated:

> Unbecoming conduct on the part of a municipal employee, especially a policeman or fireman, is any conduct which adversely affects the morale or efficiency of the bureau to which he is assigned. It is indispensable to good government that a certain amount of discipline be maintained in a public service. Unbecoming conduct is also any conduct which has a tendency to destroy public respect for municipal employees and confidence in the operation of municipal services. It is not necessary that the alleged conduct be criminal in character nor that it be proved beyond a reasonable doubt .... It is elementary that the measure of proof to convict for a criminal offense is substantially different and greater than that necessary to support the dismissal of a municipal employee. It is sufficient that the complained of conduct and its attending circumstances be such as to offend publicly accepted standards of decency.

The doctrine of vagueness incorporates notions of fair notice or warning. *See Parker v. Levy,* 417 U.S. 733 (1974). The record discloses that, of the 15 separate bases for disciplinary action set forth in Chapter 5, Article I of the Police Manual, only 3 refer to conduct while "on duty" and the other 12 relate to con-

duct which can occur either on or off duty. In addition, the code of ethics applicable to appellant, to which he subscribed at the time of his becoming a member of the police department, specifically obligated him to "keep [his] private life unsullied as an example to all . . . ." Appellant here cannot fairly claim that he had no notice of what was required of him as a member of the Philadelphia Police Department.

Finally, appellant contends that he was dismissed for conduct which was performed off duty and in the seclusion of his own house and the apartment of a fellow officer and the basis for his dismissal violates his constitutional right of privacy under the Fourteenth Amendment of the United States Constitution.

Off-duty conduct by policemen and firemen may be used as the basis for a charge of conduct unbecoming an officer. *Zeber Appeal, supra; Vandergrift Borough v. Polito,* 397 Pa. 538, 156 A.2d 99 (1959); *Eppolito v. Bristol Borough,* 19 Pa. Commonwealth Ct. 99, 339 A.2d 653 (1975); *Gabauer v. Civil Service Commission,* 6 Pa. Commonwealth Ct. 646, 297 A.2d 507 (1972).

Judge Kramer, in his very able opinion in *Faust v. Police Civil Service Commission of Borough of State College, supra,* answered a similar right-of-privacy argument. Applying the language utilized by Judge Kramer to the instant case, in arguing that the adultery here in question was committed only in private, Fabio apparently implies that only public adultery may be deemed immoral or conduct unbecoming an officer, and, therefore, sufficient to support dismissal. While we do not believe that a distinction between "private" and "public" immorality or conduct has any bearing on the decision here, it is a sufficient answer to Fabio's argument on this point to note that Fabio's "private" conduct led to rumors

and, eventually, the discovery of his relationship and a complaint by his father-in-law. These are uncontroverted record facts, and they are sufficient to make Fabio's conduct a matter of legitimate concern to the City of Philadelphia. Fabio's attempts to keep his conduct private were obviously unsuccessful; his adulterous acts, in fact, became a matter of public knowledge.[5]

In summation, we can but recognize that, although we are dealing here with violations of the Police Manual of the City of Philadelphia and not of The Borough Code, in essence this case is *Faust* revisited. Accordingly, we hold that adultery by a member of the Philadelphia Police Department, committed while not in uniform and off duty, is conduct unbecoming an officer and a course of conduct indicating little or no regard for his responsibility as a member of the Police Department under and in violation of Article I, Section 1.75 of the Philadelphia Police Department Duty Manual.[6]

Order affirmed.

Judge ROGERS concurs in the result.

### ORDER

AND Now, this 16th day of May, 1977, the order of the Court of Common Pleas of the County of Phil-

[5] "The [Supreme] Court's decisions recognizing a right of privacy also acknowledge that some state regulation in areas protected by that right is appropriate." *Roe v. Wade*, 410 U.S. 113, 153-54 (1973). At some point those interests which compete with the interest in privacy become sufficiently compelling to sustain regulation. *Id. See generally* Clark, *Constitutional Sources of the Penumbral Right to Privacy*, 19 Villanova L. Rev. 833 (1974).

[6] *Compare Comly v. Lower Southampton Township*, 27 Pa. Commonwealth Ct. 202, 365 A.2d 883 (1976); *City of York v. Dinges*, 21 Pa. Commonwealth Ct. 322, 345 A.2d 776 (1975); *Kramer v. City of Bethlehem*, 5 Pa. Commonwealth Ct. 139, 289 A.2d 767 (1972).

adelphia which affirmed the decision of the Civil Service Commission in denying the appeal of Nicholas Fabio from his dismissal as a member of the Philadelphia Police Department is hereby affirmed.